## COMPLETE RELEASE AND FULL SATISFACTION BY COMPROMISE

### *Preamble*

A lawsuit is currently pending in the United States District Court for the District of Oregon, entitled:

Estate of Chase Hammer by and through its personal representative Steve Hammer, M.P., a minor by and through her mother Christine Parkins, L.H., a minor by and through her mother Megan Barfield, Steve Hammer, an individual, and Janet Williams, an individual, Plaintiffs, v. City of Salem, a municipality, Ryan Demmer, an individual, and Treven Upkes, an individual, Defendants, Case No. 6:13-cv-01824-AA (hereinafter "the Lawsuit").

As a result of judicial settlement conferences presided over by the Honorable John Acosta and the Honorable Thomas Coffin, an agreement was reached to settle the Lawsuit and all claims against defendants that could have been included in it by any and all persons or entities. The terms of the settlement are set forth below.

### *Claimants*

The following persons are referred to hereinafter both individually and collectively as Claimants:

Steve Hammer, as Personal Representative of the Estate of Chase Hammer;

Steve Hammer, individually (father of Chase Hammer);

Janet Williams, individually (mother of Chase Hammer);

M███ P███ (referred to in the Lawsuit as "M.P."), minor child of Chase Hammer, by and through her mother Christine Parkins;

L███ H███ (referred to in the Lawsuit as "L.H."), minor child of Chase Hammer, by and through her mother Megan Barfield.

///

///

### *Released Parties*

1 – **COMPLETE RELEASE AND FULL SATISFACTION BY COMPROMISE**

The following persons and entities are referred to hereinafter both individually and collectively as the Released Parties:

> Ryan Demmer;
>
> Treven Upkes;
>
> The City of Salem; and
>
> Their past and present agents, employees, officers, representatives, insurers, attorneys and any and all persons and/or entities in interest with them and/or that may be alleged to be responsible in any way for the claims and allegations made in the Lawsuit or regarding factual allegations or claims that could have been made in the Lawsuit.

### *Terms*

In consideration of payment of One Hundred Thousand and No/Dollars ($100,000.00), along with certain non-monetary considerations set forth in Exhibit A attached hereto, Claimants forever release and discharge the Released Parties of and from any and all claims, demands, causes of action or suits of any and every nature, for damages or otherwise, which now exist or at any time in the future may exist or be asserted by Claimants or other parties which are connected or related in any way with the incidents and allegations set forth in the Lawsuit or regarding factual allegations or claims which could have been set forth in the Lawsuit. Claimants further agree to dismiss the Lawsuit with prejudice and without costs to any party.

Claimants voluntarily enter into this RELEASE and settlement with full knowledge of the situation at hand, under advice of counsel of their choice and after receiving probate court approval of this settlement. The undersigned understand that this settlement is intended to entirely conclude and bar all possible claims which were or could have been included in the Lawsuit (including claims by all actual or alleged children or family members of Chase Hammer) against any and every conceivable person or entity. The undersigned understand that as a result of this settlement the Estate of Chase Hammer, all possible beneficiaries of that Estate, and all relatives, surviving spouses, or family members of Chase Hammer (including his children) will be forever barred from

2 – **COMPLETE RELEASE AND FULL SATISFACTION BY COMPROMISE**

pursing claims in the future against the Released parties regarding matters covered by this Release, even if there is a change in circumstances or new information comes to light.

The undersigned understand and acknowledge that the Released Parties deny fault or wrongdoing in connection with the incidents alleged in the Lawsuit. This settlement and **RELEASE** are not an admission of any legal liability, fault or wrongdoing on the part of any of the Released Parties. The undersigned understand and agree that none of the plaintiffs in the Lawsuit is a prevailing party as that term is used under 42 U.S.C. § 1988 or any other rule or statute.

Claimants understand and agree that any and all outstanding claims, subrogation rights, reimbursement obligations or liens from any source whatsoever (including Oregon DHS, private health insurers or other governmental entities or programs), are to be satisfied by them out of the settlement payment specified above.

Through their attorneys, the undersigned diligently attempted to determine whether any governmental entity (including but not limited to Medicare, DHS, OHP, etc.) or private entity (e.g. hospitals, physicians, attorneys, health insurers, etc.) have any lien or claim to or against the settlement payment specified in the first sentence of this document. Oregon DHS has been notified (1) that the Estate of Chase Hammer was been duly opened; (2) that the Lawsuit is being settled; and (3) that Chase Hammer's children are receiving a portion of the monetary settlement payment.

The undersigned represent that DHS has and has asserted no lien or claim in connection with the Lawsuit and/or this settlement. The undersigned believe and hereby represent there are no claims or liens asserted by any other entity or person. Nevertheless, Claimants agree to defend and hold the Released Parties harmless from any such claim, subrogation right, reimbursement obligation or lien and to fully indemnify them, including their attorneys' fees whether incurred in litigation, arbitration or appeal. Claimants also agree to indemnify, defend and hold the Released Parties harmless from any demand, suit, claim or action asserted or brought against any of the Released Parties by any alleged family member or relative of Chase Hammer (including but not limited to his parents, step parents, children, step children or siblings) that relate in any way to the incidents alleged regarding the facts at issue, or which could have been alleged, in the Lawsuit. The

3 – **COMPLETE RELEASE AND FULL SATISFACTION BY COMPROMISE**

undersigned will further indemnify, defend and hold the release parties harmless from any future claim by any alleged creditor or beneficiary of the Estate of Chase Hammer related in any way to the Lawsuit, its settlement and/or the distribution or management of settlement proceeds.

This Release and settlement shall operate for the benefit of the Released Parties and all those in interest with them, their personal representatives, successors, assigns, insurers and attorneys. This **RELEASE** is intended to be a full and complete release of all conceivable claims against all possible persons or entities by all possible persons or entities and in the event of any alleged ambiguity must be construed as broadly as necessary in order to achieve that effect for the benefit of each of the Released Parties. Any alleged or asserted ambiguity in this Release shall be interpreted in a manner that affords the Released Parties the maximum possible protection from future claims, demands or suits of any and every nature. The defense, indemnity and hold harmless obligations under this Release are legally binding not only on the Estate of Chase Hammer, but also on any Guardianship(s) or Conservatorship(s) that now exist or come into existence in the future for the minor children mentioned above and below.

The undersigned **Steve Hammer** warrants that he is (1) the duly appointed Personal Representative of the Estate of Chase Hammer; and (2) that he has obtained probate court approval of this settlement of the wrongful death claim asserted in the Lawsuit.

The undersigned **Christine Parkins** warrants that (1) she is the biological mother and custodial parent of M█ P█, a minor; (2) that she has obtained probate court approval of this settlement of her child's claim asserted in the Lawsuit; (3) that she has full legal authority and probate court approval to execute this document; (4) that she has full legal authority and probate court approval to waive any and all future claims by that child against the Released Parties; and (5) that she has full legal authority and probate court approval to bind that child to the defense, indemnity and hold harmless obligations contained in this **RELEASE.**

The undersigned **Megan Barfield** warrants that (1) she is the biological mother and custodial parent of I█ H█, a minor; (2) that she has obtained probate court approval of this settlement of her child's claim asserted in the Lawsuit; (3) that she has full legal authority and

4 – **COMPLETE RELEASE AND FULL SATISFACTION BY COMPROMISE**

probate court approval to execute this document; (4) that she has full legal authority and probate court approval to waive any and all future claims by that child against the Released Parties; and (5) that she has full legal authority and probate court approval to bind that child to the defense, indemnity and hold harmless obligations contained in this **RELEASE**.

The undersigned has or will obtain whatever consents, waivers or court approvals of this settlement and **RELEASE** as are necessary or advisable to ensure the Release Parties·are afforded the maximum legal protection possible from future claims, liens, suits or legal actions related to the events giving rise to the Lawsuit itself and its settlement. Counsel for Claimants will provide counsel for the Released Parties with copies of all such consents, approvals, orders and/or judgments.

This Agreement may be executed in any number of counterparts, and each such counterpart shall be deemed to be an original instrument, but all such counterparts shall constitute one agreement.

THE UNDERSIGNED HAVE COMPLETELY READ THIS **RELEASE** AND VOLUNTARILY ACCEPT THE BENEFITS, RISKS AND OBLIGATIONS CONTAINED IN IT. THE UNDERSIGNED ALSO WAIVE ANY FUTURE CLAIM NOT TO HAVE FULLY READ OR COMPLETELY UNDERSTOOD THIS DOCUMENT OR THAT IT IS THE PRODUCT OF FRAUD, DURESS OR UNDUE INFLUENCE.

$\frac{8/26/16}{\text{Date}}$

Steve Hammer, Personal Representative
Of the Estate of Chase Hammer

$\frac{8/26/16}{\text{Date}}$

Steve Hammer, Individually

$\frac{8-25-16}{\text{Date}}$

Christine Parkins, biological and custodial parent of minor child M B

$\frac{8-27-16}{\text{Date}}$

Megan Barfield, biological and custodial parent of minor child H H

$\frac{8/25/16}{\text{Date}}$

Janet Williams, Individually

///

5 – **COMPLETE RELEASE AND FULL SATISFACTION BY COMPROMISE**

Approved as to form this _12_ day of ~~August,~~ 2016   September
J. Ashlee Albies, OSB #051846
Attorney for Claimants

The City of Salem

by and through

Steven D. Powers
City Manager

(Title)

This _2 9_ day of _August_ 2016.

Approved as to form this _14th_ day of _September_ 2016
Robert Wagner, OSB #844115
Attorney for Defendants

6  –  COMPLETE RELEASE AND FULL SATISFACTION BY COMPROMISE

**EXHIBIT A TO COMPLETE RELEASE AND SATISFACTION BY COMPROMISE IN THE MATTER OF <u>ESTATE OF CHASE HAMMER ET AL V. CITY OF SALEM ET AL</u>, U.S.D.C. CASE NO. 6:13-CV-01824-AA**

**(1) Salem will develop a protocol for dealing with family members of subjects of officer-involved shootings**.

The Salem Police Department shall develop a protocol or policy, and training to implement that protocol or policy, that following a critical incident or event, the Salem Police Department officers will:

a.    treat family members of the injured or deceased persons with respect,

b.    provide family members with contact information for Marion or Polk County Mental Health for referrals to the appropriate service professional, and

c.    provide information on how the family can request further information from the agency in charge of the particular investigation.

The administration of these protocols will be affected by the fact that investigations of critical incidents may be conducted by an outside agency and/or the District Attorney's Office, and further, that the above protocol or policy will be administered in such a way as to not interfere with the gathering of evidence.

**(2) Salem agrees to research and develop a more comprehensive policy to deal with mental health issues and people in crisis**.

a.    Salem shall use language in its Law Enforcement Operations Policy reflecting the value and sanctity of human life and recognizing the inherent dignity of every person.

b.    Salem shall include language in its Use of Force Policy reflecting a commitment to use only such force as is objectively reasonable under all of the circumstances confronting officers, including taking into account the subject's emotional or mental state where applicable, and

c.    Salem shall amend its existing Use of Force Policy and create a policy on interactions with persons with mental health issues to supplement its Use of Force Policy.   These policies shall be consistent with the Oregon Association of Chiefs of Police and the Oregon State Sheriff's Association model policies on these subjects. Salem agrees to incorporate the concept that during confrontations with persons experiencing mental health issues, officers will recognize and balance the governmental interest in providing care to the person with the governmental interest in the safety of the public, law enforcement personnel, emergency personnel and mental health personnel.

1

Salem further agrees that its training will flow out of and be consistent with the current and amended policies and to include, to the extent not already provided, confrontation simulation and critical incident response on use of force and de-escalation techniques to resolve confrontations with people experiencing mental health issues through the use of de-escalation techniques and lower levels of force, while also teaching that traditional de-escalation tactics (such as "verbal judo") may not work on people in mental health crisis. Salem Police Officers are subject to Salem Police Department policies and are subject to corrective action should they fail to follow policy.

Salem agrees to retain an outside expert to review and assess the related policies and training and will set the goal of adopting said policies and training with twelve (12) months of the dismissal of this lawsuit.

d.      Salem agrees to avoid use of the term "mentals" to refer to people experiencing mental health issues. Salem will incorporate into its policies and training the practice to avoid the use of the term "mental" to refer to such subjects and to change its nomenclature to the term consistent with language developed by the Oregon Association of Chiefs of Police and Oregon State Sheriff's Association.

e.      Salem agrees that where its law enforcement officers initiate a Police Officer Custody (POC), based purely on non-criminal conduct obviously related to the subject's mental health issues, the officers will use only such force as is objectively reasonable under all the circumstances taking into account the person's emotional and mental state.

f.      When responding to calls of people experiencing mental health issues, as described in and pursuant to the MOU between Marion County and Salem, whether the person is taken into custody or not, Salem agrees its employees will provide the person with contact information for Marion or Polk County Mental Health for referral to the appropriate service professional.

g.      Salem agrees to retain an outside police practices expert with expertise in police practices related to mental health issues, to review and assess the policies and related trainings identified in paragraphs 2a and 2c above. The expert will conduct the assessment one year after the adoption of the policy and training, and will be tasked with ensuring the training is consistent with the policy.

The City may have to use a Request for Proposal process to retain such an expert, depending on projected cost. Plaintiffs will have the opportunity to provide written input, and Salem will consider that input, on the objective criteria to be included in the RFP process.

h.      Salem agrees to incorporate into its training, where appropriate, people with lived experience with mental health issues, including consumers of mental health

2

services. Salem agrees to review training materials provided by Maria Hammer, in the form of a written statement.  Salem, in its sole discretion, may choose to incorporate the materials.

**(3) Salem shall review and assess Salem PD's response to suicide calls for the past 5 years**.

Salem shall conduct a review and assessment of its police response to suicide calls over the past 5 years. This assessment shall be made utilizing specialists in mental health and suicide response who are not employees of the Police Department to make recommendations. This assessment and report shall be made public and presented to the Salem City Council during a public meeting.

**(4) Salem will continue to participate in and expand, if resources allow, mobile crisis response teams and crisis outreach response teams in coordination with Marion County Mental Health Services and Sheriff's Office.**

Salem shall continue to seek additional funding from outside sources to participate in the mobile crisis response team and crisis outreach response team in coordination with Marion County Health Services and Sheriff's Office. Salem recognizes the value and need for the services provided and is committed to continue to provide these valuable services and expand them if possible as outside funding allows.

**(5) Meeting with Ms. Williams**

a.    The Chief of Police agrees to meet with Ms. Williams and Maria Hammer to discuss this incident and follow up.

b.    Corporal Demmer shall meet with Ms. Williams and Judge Acosta together at a location and time to be determined by his Honor. Although Maria Hammer will not be present for this meeting, she will have the opportunity to provide a brief written statement for use at this meeting subject to Judge Acosta's review and sole discretion whether to present it.

**(6) Enforcement and Interpretation**

The parties agree this settlement agreement is subject to Oregon law, and that Judge John Acosta will have continuing jurisdiction to resolve any disputes about the material terms of this agreement.